UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

|  |  |
|---|---|
| JOHNNY REED, IV, et al. | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| NEW JERSEY DIVISION OF YOUTH | : |
| AND FAMILY SERVICES, et al., | : |
| | : |
| Defendants. | : |

|  |
|---|
| Civil Action No. |
| 09-3765-NLH-JS |
| |
| **OPINION** |

---

<u>Appearances</u>:
JOHNNY REED, IV
P.O. BOX 109
SICKLERVILLE, NJ 08081
and
MONICA RENEE HAYMAN
P.O. BOX 109
SICKLERVILLE, NJ 08081
*Pro Se Plaintiffs*

KAREN LEE JORDAN
OFFICE OF NJ ATTORNEY GENERAL
DIVISION OF LAW
R.J. HUGHES JUSTICE COMPLEX
PO BOX 116
TRENTON, NJ 08625-0116
*Attorney for defendants Linda Almodovar, Tracey Nelson, Evaristo Fontanez, Vernita Blocker, and Nancy R. Andre*

RAHAT N. BABAR
DEPARTMENT OF LAW & PUBLIC SAFETY
25 MARKET STREET
P.O. BOX 116
TRENTON, NJ 08625
*Attorney for Stephanie Shreter*

**<u>HILLMAN, District Judge</u>**

Before the Court are two motions to dismiss, one filed by defendant Stephanie Shreter, and the other filed by defendants Linda Almodovar, Tracey Nelson, Evaristo Fontanez, Vernita

Blocker, and Nancy R. Andre.  Because plaintiffs' claims of Fourteenth Amendment due process violations are barred by the Rooker-Feldman doctrine, the motions will be granted.

**I.     BACKGROUND**

**A.     Factual Background**

This dispute arises from the removal of plaintiffs' biological minor child by the New Jersey Division of Youth and Family Services ("DYFS").  DYFS removed the child after what has been referred to as a "stand-off" on the Walt Whitman bridge on March 27, 2008, between plaintiffs and the police in which the police negotiated the surrender of the child.  Both plaintiffs were taken into police custody as a result of the incident.  The state court entered an order of temporary custody and appointed a Law Guardian for the child.

**B.     Procedural Background**

Parental termination proceedings regarding the custody of plaintiffs' minor son were held in the New Jersey Superior Court, Family Part ("Family Part"), and on April 22, 2009, the Family Part ordered that the plan for termination of parental rights and adoption was appropriate.  Following trial, on May 24, 2010, the Family Part entered a final order terminating the parental rights of plaintiffs.  In July 2010,[1] plaintiffs filed a

---

[1]     The clerk's filing stamp does not include the day the notice was filed.

notice of appeal with New Jersey Superior Court, Appellate Division ("state appellate court").[2]

While the Family Part proceeding was pending, but almost a year before they filed their appeal in state court, plaintiffs, proceeding pro se, filed their complaint in this Court on July 27, 2009, against 49[3] defendants listing 22 causes of action and requesting five billion dollars in damages.  On August 6, 2009, the Court entered an Order granting plaintiffs' in forma pauperis application, and permitting plaintiffs to amend their complaint to comply with Fed.R.Civ.P. 8(a).  Plaintiffs filed an amended complaint on August 26, 2009, but the amended complaint was also deficient and failed to adhere to Fed.R.Civ.P. 8(a).  The Court entered a second Order on October 20, 2009, permitting plaintiffs to file a second amended complaint. Plaintiffs filed a second amended complaint on November 6, 2009,

---

[2]  Neither party addresses the status of this appeal.  To the extent that this appeal is pending, it is likely this Court would also be barred from litigating this dispute under the Younger Abstention Doctrine.  See Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010) ("Under Younger ... federal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding."); Kendall v. Russell, 572 F.3d 126, 131 (3d Cir. 2009) (Abstention is  appropriate "when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.").

[3] Although 50 defendants were originally listed, one defendant was listed twice.

but did not prosecute their case further.

On August 25, 2010, the Court entered an Order to Show Cause ordering plaintiffs to prosecute their case or have their case dismissed.  In response, plaintiffs served their complaint on defendants who in turn filed motions to dismiss.  On February 28, 2011, plaintiffs filed a motion for leave to file a third amended complaint.  The Court granted the motion and granted voluntary dismissal of 43 defendants.[4]

In their third amended complaint, brought pursuant to 42 U.S.C. § 1983 and § 1985, plaintiffs allege that defendants violated their due process rights guaranteed under the Fourteenth Amendment, and that defendants engaged in a civil conspiracy to deprive plaintiffs of their due process rights.  Plaintiffs named as defendants Stephanie Shreter, the court-appointed Law Guardian who represented the child at the parental termination proceedings, as well as five employees of DYFS involved in the state proceedings.  Plaintiffs currently seek damages in the

---

[4]    In the Order granting leave to amend, the Magistrate Judge acknowledged the defendants' argument that amending the complaint would be futile, but nevertheless elected not to address the merits since it would only result in the denial of the motion to amend and the District Judge would have to essentially decide the same issues which had been raised in motions to dismiss pending at that time.  The Magistrate Judge found that the most economical and efficient way to address the various outstanding motions was to permit the amendment, permit voluntary dismissal of 43 defendants, and allow the remaining defendants to raise all defenses in a motion to dismiss the third amended complaint.

4

amount of $100,000 against each defendant and seek an award of
punitive damages in the amount of ten million dollars.

The remaining six defendants move to dismiss
plaintiffs' third amended complaint on various grounds.  Because
plaintiffs' claims are barred under the <u>Rooker-Feldman</u> doctrine,
defendants' motions to dismiss shall be granted.

## II.  <u>DISCUSSION</u>

### A.  Jurisdiction

Plaintiffs have alleged that defendants violated their
due process rights under the Fourteenth Amendment and, therefore,
this Court exercises subject matter jurisdiction pursuant to 28
U.S.C. § 1331 (federal question jurisdiction).

### B. Standard for 12(b)(1) Motion to Dismiss

Defendants make a factual attack on this Court's
jurisdiction on grounds that plaintiffs' constitutional claims
are inextricably intertwined with an underlying state court
decision so that this Court is barred from exercising
jurisdiction under the <u>Rooker-Feldman</u> doctrine.  A challenge to
the federal court's subject matter jurisdiction on a motion to
dismiss is made pursuant to Federal Rule of Civil Procedure
12(b)(1).  In considering a Rule 12(b)(1) motion, "the district
court may not presume the truthfulness of plaintiff's
allegations, but rather must 'evaluat[e] for itself the merits of
[the] jurisdictional claims.'"  <u>Hedges v. United States</u>, 404 F.3d

744, 750 (3d Cir. 2005) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "[A] district court acting under Rule 12(b)(1) may independently evaluate the evidence regarding disputes over jurisdictional facts, rather than assuming that the plaintiff's allegations are true." CNA v. U.S., 535 F.3d 132, 140 (3d Cir. 2008). A district court is permitted to make factual findings, beyond the pleadings, that are decisive to determining jurisdiction. Id. at 145; Waudby v. U.S., 2010 WL 324521, at *5 (D.N.J. Jan. 19, 2010) (Under Rule 12(b)(1), "no presumption of truthfulness attaches to the allegations in the complaint and the court may consider matters outside the pleadings such as affidavits without converting the motion to one for summary judgment.") (citing Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999)).[5] "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,

---

[5]    In this case, the Court considered matters outside of plaintiffs' complaint to determine whether it has subject matter jurisdiction. Specifically, the Court considered the underlying facts regarding the state court action, which facts the plaintiffs do not dispute, as well as a Superior Court of New Jersey judgment and notice of appeal. Of the latter documents, the Court takes judicial notice. See Laplace v. Estate of Laplace ex rel. Laplace, 220 Fed.Appx. 69, 71 (3d Cir. 2007) (taking judicial notice of Iowa court order).

1409 (3d Cir. 1991)).

       C.    **Rooker-Feldman Doctrine**

      "The Rooker-Feldman doctrine deprives a federal district court of jurisdiction to review, directly or indirectly, a state court adjudication." Judge v. Canada, 208 Fed.Appx. 106, 107 (3d Cir. 2006) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)).  This doctrine precludes courts from evaluating "constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding." FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996) (internal quotations omitted).  "State and federal claims are inextricably intertwined (1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered [or] (2) when the federal court must ... take action that would render [the state court's] judgment ineffectual." ITT Corp. v. Intelnet Intern., 366 F.3d 205, 211 (3d Cir. 2004) (internal quotation marks and citations omitted).  "In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling." FOCUS, 75 F.3d at 840 (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)); see also Exxon Mobil Corp. v. Saudi Basic Industries

Corp., 544 U.S. 280, 291-92 (2005) (explaining that 28 U.S.C. §
1257 has long been interpreted as vesting authority to review a
state court's judgment solely in the Supreme Court).

The Third Circuit has consistently affirmed district
court determinations that the Rooker-Feldman doctrine prohibits
suits brought in federal court pursuant to Section 1983 where
plaintiffs challenge the judgments of state family courts.  See,
e.g., Gass v. DYFS Workers, 371 F. App'x 315, 315-16 (3d Cir.
2010) (affirming district court dismissal under Rooker-Feldman of
claims asserted against state court judge, DYFS, DYFS officials,
deputy attorneys general, and public defender attorney in
underlying termination of parental rights action to the extent
plaintiff challenged family court orders regarding custody of two
minors); Johnson v. City of New York, 347 F. App'x 850, 851-52
(3d Cir. 2009) (affirming district court determination that
claims were prohibited by Rooker-Feldman to the extent plaintiff
sought review of family court decisions regarding emergency
removal of children from his home); McKnight v. Baker, 244 F.
App'x 442, 444-45 (3d Cir. 2007) (affirming district court
finding that the court lacked jurisdiction under Rooker-Feldman
to review Section 1983 claims where crux of plaintiff's complaint
was that defendants conspired to have the family court suspend
his visitation rights with his daughter); McAllister v. Allegheny
Cnty. Family Div., 128 F. App'x 901, 902 (3d Cir. 2005)

(affirming district court dismissal of federal constitutional claims where plaintiff "plainly [sought] to void or overturn adverse rulings entered in the child-custody litigation" by state family court because such relief required "a finding that the state court ... made incorrect factual or legal determinations").

Similarly, courts within this District have repeatedly recognized that they lack subject matter jurisdiction to entertain claims which challenge adjudications made by state family courts. See, e.g., Severino v. Div. of Youth & Family Servs., No. 11-3767, 2011 WL 5526116, *1 (D.N.J. Nov. 14, 2011) (dismissing sua sponte pro se plaintiff's Section 1983 claims against defendants, including DYFS, DYFS caseworker, New Jersey State Court Judges, and a deputy attorney general, under Rooker-Feldman which challenged state court proceeding terminating plaintiff's parental rights); Wilson v. Atl. Cnty. DYFS, No. 10-202, 2010 WL 2178926, at *5-6 (D.N.J. May 25, 2010) (dismissing plaintiff's complaint against local DYFS agency and state court judge and finding that Rooker-Feldman claims relating to the family court's issuance of a restraining order which effectively barred plaintiff from seeing his son because the claims were "inextricably intertwined" with the restraining order and amounted to a "prohibited appeal" from the family court adjudication); Kwiatkowski v. De Francesco, No. 01-6145, 2006 WL 2347831, *4-5 (D.N.J. Aug. 11, 2006) (concluding that Rooker-

9

<u>Feldman</u> barred constitutional claims because they were "a direct result of the actions taken by DYFS and the state courts" and were "so inextricably intertwined with the state court proceedings that federal review [was] precluded as it would be tantamount to appellate review of state court determinations.").

Plaintiffs argue that their alleged violations of constitutional rights are not "as a result of any erroneous judgment entered by the state court, but rather, as a result of the Defendants' actions and conduct, or lack thereof, prior to the entry of any state court judgment removing their child from their care." (emphasis removed).

Although plaintiffs state that they seek damages as a result of the defendants' actions prior to the entry of the state court judgment, defendants' actions are "inextricably intertwined" with claims that were "actually litigated" by the Family Part.  <u>See</u> <u>McAllister</u>, 128 Fed.Appx. at 902 (upholding application of <u>Rooker-Feldman</u> because "although couched as an action against the named defendants for damages, McAllister plainly [sought] to void or overturn adverse rulings entered in the child-custody litigation."); <u>Fleming v. Cape May County</u>, No. 11-3894, 2011 WL 6779996, at *3 (D.N.J. Dec. 23, 2011) (finding <u>Rooker-Feldman</u> applied where plaintiff alleged his daughter was removed without due process of law because in order to address claim Court would be required to determine that state court's

decision was wrong, or void state court's ruling which "is precisely what this federal court is prohibited from doing under the Rooker-Feldman doctrine.").

Plaintiffs are seeking to have this Court find that defendants violated their due process rights by: terminating their parental rights,[6] conducting hearings without notice or opportunity to be heard, deliberately submitting false or misleading information, failing to adhere to the goal of reunification, failing to advise plaintiffs of scheduled appointments, distributing confidential information to third parties without authorization and failing to following removal procedures pursuant to Title 9 of the New Jersey Code.  If, as plaintiffs request, this Court found due process violations, then the result would be that the Family Part erroneously removed the child from their custody and erroneously terminated their parental rights.  Such a finding, however, would amount to a determination that the Family Part's judgment was erroneously entered, or would render the judgment ineffectual.  See ITT

_____

[6]    There is a "constitutionally protected liberty interests that parents have in the custody, care and management of their children." See Croft v. Westmoreland County CYS, 103 F.3d 1123, 1125 (3d Cir. 1997) (citing Lehr v. Robertson, 463 U.S. 248, 258, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir. 1987)).  However, this liberty interest is not absolute and must be balanced with "the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse." Id. at 1125.

11

Corp., 366 F.3d at 211.  Although plaintiffs try to plead in such a way as to circumvent the rule under Rooker-Feldman, the actions of the defendants prior to the hearing which resulted in the termination of plaintiffs' parental rights and removal of the child are "inextricably intertwined" with the relief requested by plaintiffs in this matter.  See FOCUS, 75 F.3d at 840. Therefore, this Court does not have subject matter jurisdiction over this claim and the matter must be dismissed.[7]

### III. **CONCLUSION**

This Court does not have subject matter jurisdiction over plaintiffs' Fourteenth Amendment due process claim and, therefore, defendants' motions to dismiss will be granted.[8]


                                    S/Noel L. Hillman
                              NOEL L. HILLMAN, U.S.D.J.

Dated: April 10, 2012

At Camden, New Jersey

_____

[7]     The civil conspiracy claim is also dismissed since the underlying Fourteenth Amendment claims are dismissed.  See Bartos v. MHM Correctional Services, Inc., No. 11-1936, 2011 WL 6065012, at *5 (3d Cir. Dec. 7, 2011) (finding that district court properly dismissed the state law conspiracy claim because plaintiff insufficiently pled an underlying cause of action).

[8]     Because the Court lacks subject matter jurisdiction, we do not address defendants' other argument that this matter should be dismissed because they are entitled to absolute immunity or defendant Shreter's additional argument that she was not acting under color of state law.